**LAW OFFICE OF WAYNE A. SILVER**
Wayne A. Silver (108135)
643 Bair Island Road, Suite 403
Redwood City, CA 94063
Phone: (650) 282-5970
Fax:     (650) 282-5980
Email: ws@waynesilverlaw.com

*Attorney for Plaintiffs, PHU K. VUONG and*
*MOSAIC REAL ESTATE INVESTMENT, LLC*

## UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| In re:<br><br>JACQUELINE LOPEZ- FLORES,<br><br>    Debtor. | Case No.: 18-52014-SLJ<br>Chapter 7 |
| PHU K. VUONG and MOSAIC REAL ESTATE INVESTMENT, LLC,<br><br>    Plaintiffs,<br><br>vs.<br><br>JACQUELINE LOPEZ- FLORES and SAUL ROBERTO FLORES,<br><br>    Defendants. | Adv. Pro. No. 19-5063-SLJ<br><br>  **Date:** September 20, 2023<br> **Time:** 9:00 a.m.<br> **Court:** Hon. Stephen L. Johnson<br>       Courtroom 10<br>       In Person |

## PLAINTIFFS' TRIAL BRIEF

# Contents

I.      INTRODUCTION ...................................................................................... 1

II.     PROCEDURAL HISTORY ........................................................................ 2

III.    PLAINTIFFS' MONETARY CLAIMS ...................................................... 3

    1.   Defendants Are Personally Liable for Plaintiffs' Investments and Loans to the Controlled Entities Under the Alter-Ego Doctrine ................................................................... 3

    2.   Defendants Are Personally Liable to the Plaintiffs for the Unpaid Secured Loans ................... 5

    3.   Defendants Are Liable for Plaintiffs' Losses On the Minnesota Property ................................ 6

IV.    DENIAL OF DISCHARGE – 11 U.S.C. § 727 ........................................... 7

   (A) The Blaze Lawsuit ........................................................................................ 7

   (B) The Controlled Entities and Residence ........................................................ 8

    1.   Denial of Discharge Under Code § 727(a)(7) - (Concealment of Property and False Oaths in Connection with Prior Bankruptcy Case) .................................................................. 8

    2.   Denial of Discharge Under 11 U.S.C. § 727(a)(2) – (Concealment of Property) ..................... 9

    3.   Denial of Discharge Under 11 U.S.C. § 727(a)(4)(A) – (False Oaths) .................................... 10

V.     Non-dischargeability of Debt Under 11 U.S.C. § 523(a)(4) – (Fraud or Defalcation While Acting in a Fiduciary Capacity) ............................................................................. 12

VI.    Non-dischargeability of Debt Under 11 U.S.C. § 523(a)(6) – (Intentional Tort - Theft) ......... 13

VII.   Receipt of Stolen Property – Treble Damages and Attorneys' Fees (California Penal Code § 496) ...................................................................................................................

.......................................................................................................................... 13

VIII.  CONCLUSION ............................................................................................ 15

Case: 19-05063   Doc# 71   Filed: 09/13/23   Entered: 09/13/23 21:14:46   Page 2 of 19

**Cases**

*Adeeb v. Adeeb (In re Adeeb)*, 787 F.2d 1339  (9th Cir. 1986) ...............................................9

*AT&T Universal Card Servs. Corp. v. Duplante (In re Duplante),* 215 B.R. 444  (9th Cir. BAP 1997) ....................................................................................................................................11

*AutoSource Capital, Inc. v. Traina (In re Traina)*, 501 B.R. 379, 384 (Bankr. N.D. Cal. 2013)........10

*Bell v. Feibush*, 212 Cal. App. 4th 1041, 151 Cal. Rptr. 3d 546 (2013)...............................14, 15

*Bernard v. Sheaffer (In re Bernard)*, 96 F.3d 1279  (9th Cir. 1996) ..........................................7, 9

*Blixseth v. Blixseth (In re Blixseth)*, 459 B.R. 444 (Bankr. D. Mont. 2011) ..................................12

*Bullock v. BankChampaign, N.A.*, 569 U.S. 267, 133 S. Ct. 1754 (2013).....................................13

*Cadleway Props., Inc. v. Armstrong (In re Armstrong)*, 2006 Bankr. LEXIS 2689, 2006 WL 2850527, at *11 (Bankr. D. Idaho Oct. 3, 2006) ....................................................................13

*Cal-Micro, Inc. v. Cantrell (In re Cantrell)*, 329 F.3d 1119 (9th Cir. 2003)...................................12

*Casamassima v. Cuadra*, No. 20-cv-04071-JSC, 2020 U.S. Dist. LEXIS 239982, 2020 WL 7482214, at *4 (N.D. Cal. Nov. 16, 2020)......................................................................................15

*Cusano v. Klein*, 264 F.3d 936, 945  (9th Cir. 2001).....................................................................11

*Devers v. Bank of Sheridan (In re Devers)*, 759 F.2d 751 (9th Cir. 1985)........................................9

*E. W. Bank v. Altadena Lincoln Crossing, LLC*, 598 B.R. 633 (C.D. Cal. 2019) ..............................6

*Enterprise Acquisition Partners, Inc.* 319 B.R. 626, 634 (9th Cir. BAP 2004) ...............................4

*Greenspan v. LADT LLC*, 191 Cal. App. 4th 486, 121 Cal. Rptr. 3d 118 (2010) ............................4

*Hansen v. Moore (In re Hansen)*, 368 B.R. 868, 877 (9th Cir. BAP 2007) ...................................10

*Honkanen v. Hopper (In re Honkanen)*, 446 B.R. 373 (9th Cir. BAP 2011) ..................................12

*Hughes v. Lawson (In re Lawson)*, 122 F.3d 1237  (9th Cir.1997) ................................................9

*In re Bohrer*, 266 B.R. 200  (Bankr.N.D.Ca. 2001)......................................................................12

*In re Ereren*, 2013 Bankr. LEXIS 4865, 2013 WL 2321917, at *4  (9th Cir. BAP 2013)..................9

*In re Khalil*, 379 B.R. 163 (9th Cir. BAP 2007).........................................................................11

*In re Rolland*, 317 B.R. 402  (Bankr.C.D.Ca. 2004) ..................................................................12

*In re Searles*, 317 B.R. 368 (9th Cir. BAP 2004) .......................................................................11

*In re Thruston*, No. AZ-14-1309-KiPaJu, 2015 Bankr. LEXIS 2153, at *26-27 ( 9th Cir. BAP, June 30, 2015) .........................................................................................................................10

*Khalil v. Developers Sur. & Indem. Co. (In re Khalil)*, 379 B.R. 163 (9th BAP Cir. 2007), aff'd, 578 F.3d 1167 (9th Cir. 2009) .......................................................................................................10

*Lacagnina v. Comprehend Sys., Inc.*, 25 Cal. App. 5th 955, 236 Cal. Rptr. 3d 641 (2018)...............14

*Lewis v. Scott (In re Lewis)*, 97 F.3d 1182 (9th Cir. 1996).........................................................12

*Li Mei Chen v. Urban Commons 6th Ave Seattle, Ltd. Liab. Co*., No. 2:21-cv-08866-JLS-DFM, 2023 U.S. Dist. LEXIS 73142 (C.D. Cal. Apr. 18, 2023). .......................................................15

*Lockerby v. Sierra*, 535 F.3d 1038  (9th Cir. 2008)....................................................................13

*Mesler v. Bragg Management Co.* (1985) 39 Cal.3d 290, [216 Cal. Rptr. 443, 702 P.2d 601.............4

*People v. Allen*, 21 Cal.4th 846  (1999)...................................................................................14

*People v. Brown*, 32 Cal. App. 5th 726 (2019)............................................................................14

*People v. Strong*, 30 Cal. App. 4th 366  (1994)..........................................................................14

*Petralia v. Jercich (In re Jercich)*, 238 F.3d 1202 (9th Cir. 2001)...............................................13

*Retz v. Samson (In re Retz)*, 606 F.3d 1189 (9th Cir. 2010 ..........................................................7

*Retz v. Samson (In re Retz)*, 606 F.3d 1189 (9th Cir. 2010) ....................................................9, 11

*Seror v. Lopez (In re Lopez)*, Nos. 1:11-bk-16307-MT, 1:12-ap-01097-MT, 2014 Bankr. LEXIS 2598, at *22-23 (Bankr. C.D. Cal. June 12, 2014) ................................................................9

Plaintiffs' Trial Brief          AP #19-5063

*Siry Inv., L.P. v. Farkhondehpour*, 13 Cal. 5th 333, 296 Cal. Rptr. 3d 1, 513 P.3d 166 (2022) .........14
*Sustainable Pavement Techs., LLC v. Holiday*, No. 2:17-cv-02687-WBS-KJN, 2019 U.S. Dist.
    LEXIS 100325, 2019 WL 2483294, at *3 (E.D. Cal. June 14, 2019) ...........................................15
*Switzer v. Wood*, 35 Cal. App. 5th 116, 247 Cal. Rptr. 3d 114 (2019)...........................................14, 15
*Thompson v. Gorner*, 104 Cal. 168, 37 P. 900 (1894). ..................................................................6
*Troyk v. Farmers Group, Inc.* (2009) 171 Cal.App.4th 1305, 90 Cal. Rptr. 3d 589 ...............................4
*United States Tr. v. Ellis (In re Ellis)*, 591 B.R. 32, (Bankr. W.D. Wash. 2018) ..............................10
*United States v. Turner*, 725 F.2d 1154 (8th Cir. 1984) .................................................................9

## Statutes

11 U.S.C. ("Code") §727(a)(2) ................................................................................................1, 4
Code (a)(4)(A), (7).............................................................................................................4
Cal.Pen.Code § 496............................................................................................................4, 14, 15
Code § 524(a)(3), ..............................................................................................................4
Code §§523(a)(4), (6) .........................................................................................................4
Code §101(7) ....................................................................................................................6
Code § 727 .......................................................................................................................10
Code § 727(a)(7)................................................................................................................8, 11
Code §§ 727(a)(2)(B) and 727(a)(4)........................................................................................9, 11
Code § 523(a)(4) ...............................................................................................................12, 13
Code §727(a)(4)(A).............................................................................................................14
Code §524(a)(3)..................................................................................................................14
Code § 523(a)(6) ...............................................................................................................13, 14

## Rules

FRBP 3007.........................................................................................................................2
Fed.R.Evid. 801(d)(2)..........................................................................................................14
FRBP 9017.........................................................................................................................14

Plaintiffs' Trial Brief      AP #19-5063

Plaintiffs PHU K. VUONG ("Vuong") and MOSAIC REAL ESTATE INVESTMENT, LLC ("Mosaic") (collectively, "Plaintiffs") submit this Trial Brief pursuant to this Court's Scheduling Order entered on May 1, 2023 (ECF # 52) and amended on May 9, 2023 (ECF # 54). Plaintiffs and Defendants are collectively referred to as the "Parties."

## I.      INTRODUCTION

The evidence in this case will show the Defendant and Debtor JACQUELINE LOPEZ-FLORES ("Debtor"), together with her non-debtor spouse SAUL ROBERTO FLORES ("Mr. Flores") (collectively, "Defendants"), are operating a fraudulent investment scheme behind the façade of several California limited liability companies and corporations, which are described in Section III (1), *infra*, and referred to as the "Controlled Entities." The evidence will also show the Defendants collectively filed four bankruptcy cases in which they omitted material information about their interests in the Controlled Entities, concealed their interests in an extremely valuable lawsuit, and made material misrepresentations and false oaths on their bankruptcy schedules, statements and declarations.

Beginning in December 2013 and continuing through June 2015, Defendants conned the Plaintiffs into making multiple investments in the Controlled Entities, and lending money directly to the Defendants purportedly secured by liens on Defendants' former residence located at 7076 Kindra Hill Drive in San Jose, California (the "Residence").

There are three overarching questions the Court will be asked to determine in this Adversary Proceeding:

1.      Are Plaintiffs entitled to a judgment against the Debtor that includes Plaintiffs' investments in the Controlled Entities under an alter ego or similar theory, and should Plaintiffs' Proofs of Claims against the Debtor therefore be allowed as filed over the Debtor's objections.

2.      Are Plaintiffs entitled to a judgment against the Debtor under California Penal Code § 496 that includes treble damages and attorneys' fees.

3.      Should the Debtor be denied a discharge under 11 U.S.C.[1] §§727(a)(2), (a)(4)(A), or

---

[1] References to Title 11 of the U.S. Code are abbreviated as the "Code."

(a)(7) and Mr. Flores denied a community discharge under Code § 524(a)(3), and/or are the Plaintiffs' claims against the Debtor nondischargeable under Code §§523(a)(4) and/or (6) and Mr. Flores under Code § 524(a)(3).

## II.    PROCEDURAL HISTORY

Plaintiffs' First Amended Complaint ("FAC") was filed on March 24, 2021 [ECF # 31]. Defendants answered, denied Plaintiffs' claims, and raised affirmative defenses  [ECF # 32]. The FAC seeks a money judgment against the Debtor in the amount of $861,932, plus treble damages, costs and attorneys' fees.

Plaintiffs also timely filed three Proofs of Claims in the Debtor's above-captioned Bankruptcy Case # 18-52014-SLJ ("Current Bankruptcy Case"): (i) Claim 7 in the amount of $138,828.63; (ii) Claim 10 in the amount of $500,000; and (iii) Claim 11 in the amount of $223,104 (the "Proofs of Claims"). Defendants objected to Claims 10 and 11 on November 22, 2021 ("Claims Objections") [Current Bankruptcy Case ECF #'s 186, 187], which were supported by declarations from Mr. Flores admitting the Plaintiffs were creditors of the Controlled Entities, but denying personal responsibility.

The Parties then stipulated that pursuant to Federal Rule of Bankruptcy Procedure ("FRBP") 3007 the Debtor's Claims Objections shall be fully consolidated with this Adversary Proceeding, such that a decision or resolution of this Adversary Proceeding would be dispositive on the Claims Objections. Defendants reserved the right to object if Plaintiffs amend the Proofs of Claims. That Stipulation was filed on December 13, 2021 and approved by the Court on December 14, 2021 [Current Bankruptcy Case ECF #'s 188 and 189].[2]

Defendants filed an Objection to Claim # 7 a year and a half later on July 28, 2023 [Current Bankruptcy Case ECF # 194] to assert a usury defense. Plaintiffs addressed this belated Objection to Claim # 7 through a motion in limine filed on September 11, 2023 [ECF # 63] scheduled to be heard on September 15, 2023.

---

[2] A similar Stipulation was also filed in this Adversary Proceeding on December 13, 2021 and approved by the Court [ECF #'s 45 and 46].

Plaintiffs' Trial Brief                                                                AP #19-5063

### III.    PLAINTIFFS' MONETARY CLAIMS

**1.    Defendants Are Personally Liable for Plaintiffs' Investments and Loans to the Controlled Entities Under the Alter-Ego Doctrine**

Uno Group Food and Beverage, LLC ("UGFB"), 95 Hamilton, LLC ("95 Hamilton"), Iron Springs Development, LLC ("Iron Springs"), Ground Zero Construction ("Ground Zero"), and Blaze, Inc. ("Blaze"), together with Uno Capital Group Holdings, LLC ("UGCH"), Eagle Sales and Development, LLC, One World Management Co., LLC, Popolo Valley Fair, LLP, Popolo Management, LLC and Eagle Home Loans and Investments, LLC are referred to as the "Controlled Entities."

As stated in the Joint Pre-Trial Conference Statement filed on August 24, 2023 [ECF # 57] (the "JPCS"), the Parties agree the Controlled Entities that are limited liability companies are managed through Boards of Directors on which at least one of the Defendants must be a Board member. (JPCS, Section A, Items 38 – 42, 50, 51 – 54, 62 – 66, 79 – 80). The evidence will show the Defendants also control the appointment of the other Directors, the Defendants always appointed the same individuals who would always do the Defendants' bidding, and had to pe present for a quorum.

The Parties also agree the Plaintiffs made the following investments in the Controlled Entities ("Investment Funds"):

| Date | Amount | Controlled Entity | JPCS Cite |
|------|--------|-------------------|-----------|
| 6/25/2014 | $250,000 | 95 Hamilton, LLC | (See Note 4)[3] |
| 2/1/2015 | 125,000 | Uno Group Food & Beverage, LLC | Section A,  #31 |
| 3/5/2015 | 125,000 | Uno Group Food & Beverage, LLC | Section A,  #32 |
| 5/14/2015 | 150,000 | Iron Springs Development, LLC | Section A,  #57 |
| Total:   $650,000 | | | |

The Parties also agree: (i) Plaintiffs were never repaid any of these funds. (JPCS, Section A, #'s 45, 56 and 71); (ii) Plaintiffs hold Code §101(7), et seq. "community claims" in the Current Bankruptcy Case (JPCS, Section A, # 11); and (iii) the Debtor and Mr. Flores have been married for

---

[3] Inadvertently omitted from the JPCS. Alleged in FAC at p.4, ¶ 17 and admitted in Defendants' Answer Filed On February 10, 2020, ¶13 [ECF # 10].

Case: 19-05063   Doc# 71   Filed: 09/13/23   Entered: 09/13/23 21:14:46   Page 7 of 19

more than 18 years never having executed either a pre-nuptial or post-nuptial agreement (JPCS, Section A, p. 2:22-23 (Item # omitted)).

The question of whether to apply the alter ego doctrine in a disputed matter in bankruptcy court is governed by the relevant state law. *Enterprise Acquisition Partners, Inc*. 319 B.R. 626, 634 (9th Cir. BAP 2004). Under California law, the alter ego doctrine applies to limited liability companies as well as corporations. *Greenspan v. LADT LLC*, 191 Cal. App. 486, 121 Cal. Rptr. 3d 118 (2010).

The California Supreme Court tells us that "[t]he essence of the alter ego doctrine is that justice be done." What the formula comes down to, once shorn of verbiage about control, instrumentality, agency, and corporate entity, is that liability is imposed to reach an equitable result. *Mesler v. Bragg Management Co*. (1985) 39 Cal.3d 290, 301 [216 Cal. Rptr. 443, 702 P.2d 601].

An intermediate California appellate court explains:

> "A corporate identity may be disregarded—the "corporate veil" pierced—where an abuse of the corporate privilege justifies holding the equitable ownership of a corporation liable for the actions of the corporation. Under the alter ego doctrine, then, when the corporate form is used to perpetuate a fraud, circumvent a statute, or accomplish some other wrongful or inequitable purpose, the courts will ignore the corporate entity and deem the corporation's acts to be those of the persons or organizations actually controlling the corporation, in most instances the equitable owners." *Troyk v. Farmers Group, Inc*. (2009) 171 Cal.App.4th 1305, 1341 [90 Cal. Rptr. 3d 589] (*Troyk*).

> "Factors for the trial court to consider include the commingling of funds and assets of the two entities, identical equitable ownership in the two entities, use of the same offices and employees, disregard of corporate formalities, identical directors and officers, and use of one as a mere shell or conduit for the affairs of the other. 'No one characteristic governs, but the courts must look at all the circumstances to determine whether the doctrine should be applied.'" (*Troyk*, supra, 171 Cal.App.4th at p. 1342.)

The evidence will show that alter ego liability applies because Defendants obtained the Investment Funds through fraud and false pretenses, by falsely claiming the Investment Funds were earmarked for certain purposes, and then immediately diverting the Investment Funds to their own purposes through the Controlled Entities. In addition, Defendants: (i) were business partners with respect to the Controlled Entities; (ii) deliberately organized, structured and operated the Controlled Entities as a shell game to allow them unfettered control; (iii) operated the Controlled Entities from

Case: 19-05063    Doc# 71    Filed: 09/13/23    Entered: 09/13/23 21:14:46    Page 8 of 19

the same offices; (iv) kept the Controlled Entities insolvent by shuffling money through numerous bank accounts using cashiers' checks and interbank transfers to hide their tracks; and (v) commingled personal expenditures within the accounts of the Controlled Entities and themselves.

Plaintiffs will offer a forensic accounting report through their financial expert Vanessa J. Hill (Plaintiffs' Exhibits 1 and/or 2, 8, and supporting documents): (i) tracing $710,000 of the Investment Funds as they were diverted through multiple bank accounts and Controlled Entities, (ii) detailing numerous transfers to and from the other Controlled Entities, as well as Other Related Parties and the Defendants through Ground Zero's banking transactions include; (iii) showing how the Defendants commingled personal expenditures within the accounts of Ground Zero, the Controlled Entities, and the Defendants; (iv) showing the commingling of funds between Ground Zero, the Controlled Entities, and the Defendants was pervasive, and as such, the funds generated by or belonging to any one entity cannot be distinguished; (v) Ground Zero is intertwined with every other Controlled Entity owned by the Defendants, and regardless of which particular Controlled Entity was intended to be the recipient of Plaintiffs' Investment Funds, Defendants wrongfully diverted all of Plaintiffs' Investment Funds to themselves through Ground Zero; and (vi) UGCH is a shell company that Defendants are also using to filter money through Ground Zero.

Plaintiffs will also offer a forensic accounting report and supporting documents through their financial expert Timothy Gillihan (Plaintiffs' Exhibits 3 and 4) that: (i) the financial records provided by the Controlled Entities are highly unreliable and suspect; (ii) the universe of financial records is inconsistent and in fact contradictory; and (iii) the documents provided are not customary for the types of records a construction company would maintain and be able to provide.

For justice to be done, Defendants must be held fully responsible for all of the Investment Funds in the Controlled Entities.

### 2.    Defendants Are Personally Liable to the Plaintiffs for the Unpaid Secured Loans

The Parties agree that on or about September 29, 2014, Vuong loaned the Defendants $75,000 through his IRA Account, "IRA Services Trust Company, CFBO Phu K. Vuong" ("Loan I"). Loan I carried interest at eight percent (8%) and was due and payable on January 6, 2015. Loan I was never repaid. [PTCS, Section A, #'s 73, 75]

Case: 19-05063   Doc# 71   Filed: 09/13/23   Entered: 09/13/23 21:14:46   Page 9 of 19

The evidence will also show that on or about October 29, 2015, Vuong loaned the Defendants $10,000 ("Loan II"). Loan II carried interest at eight percent (8%) and was due and payable on November 29, 2015. Loan II was never repaid.

Both Loans I and II were purportedly secured by the filing of Deeds of Trust against the Residence, however the Residence was so heavily encumbered by other liens and judgments at the time of Loans I and II that Vuong was unsecured because there was no equity left in the Residence after deduction for the other liens and judgments against it. Defendants concealed this information from Vuong.

The amounts due on Loans I and II are reflected in Proof of Claim 7, which was filed in the amount of $138,828.63. Defendants belatedly objected to Claim 7 on the basis the default interest is usurious, and contend Claim 7 should only be allowed in the amount of $93,066.67. [Objection to Claim 7 filed on July 28, 2023, Current Bankruptcy Case ECF # 194] This matter is also subject to a Motion in Limine to be heard on September 15, 2023.

The Promissory Notes attached to Claim 7 each provide for default interest in Section 4(c), and default interest is generally allowed in California. *E. W. Bank v. Altadena Lincoln Crossing, LLC*, 598 B.R. 633, 639 (C.D. Cal. 2019), citing *Thompson v. Gorner*, 104 Cal. 168, 37 P. 900 (1894).

**3.  Defendants Are Liable for Plaintiffs' Losses On the Minnesota Property**

Plaintiffs' Claim 11 includes $73,104 attributable to Plaintiffs losses on the renovation of a residential investment property located at 496 Minnesota Avenue in San Jose, California ("Minnesota Property"). There is virtually no agreement among the Parties on this transaction.

This dispute is detailed in the JPCS at Section A, #'s 12 – 30, and Section B, #'s 1 – 10. Plaintiffs filed a civil action against Mr. Flores, Ground Zero, and Ali Abiani ("Abiani") on June 15, 2018 for damages and judicial foreclosure against the Security Property, Santa Clara County Case No. 18CV330156 ("Minnesota Property Lawsuit"). The Minnesota Property Lawsuit was stayed pursuant to a stipulation on or about April 19, 2021 after the Debtor filed the Current Bankruptcy Case. The Minnesota Property Lawsuit remains pending. Plaintiffs incurred $ 36,104 in attorneys' fees and $37,000 in damages in connection with the dispute over the Minnesota Property and

Security Property, and thus claimed damages in the amount of $73,104 which are included in Claim 11.

Plaintiffs' theory of liability is known as "Tort of Another," which is an exception to the American Rule that parties are generally responsible for their own attorneys' fees. Defendants have challenged Plaintiffs Tort of Another theory in a Motion in Limine filed on September 12, 2023 [ECF # 67]  Plaintiffs' opposition to Defendants' motion in limine will be filed on September 14, 2023 and argued the next day. Plaintiffs incorporate that opposition herein to avoid redundancy.

And as discussed in Section III. (1) *supra*, the evidence will show the Defendants are alter egos of Ground Zero and the Controlled Entities, and therefore individually liable for Plaintiffs' damages and attorneys' fees related to the Minnesota Property Dispute.

## IV.     DENIAL OF DISCHARGE – 11 U.S.C. § 727

Plaintiffs bear the burden of proving by a preponderance of the evidence that the Debtor's discharge should be denied (*Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010)), and are prepared to do so notwithstanding the fact courts are to "'construe § 727 liberally in favor of debtors and strictly against parties objecting to discharge." *Bernard v. Sheaffer (In re Bernard)*, 96 F.3d 1279, 1281 (9th Cir. 1996)

### (A)     The Blaze Lawsuit

In February 2015, Blaze, Inc. ("Blaze") and the Debtor filed a lawsuit against VF Mall in Santa Clara County Superior Court, Case No.1-15-CV-280113 ("Blaze Lawsuit"). Details of the Blaze Lawsuit and the Debtor's failure to disclose it in her bankruptcy schedules despite numerous amendments until after the existence of the Blaze Lawsuit was made known to this Court by Plaintiffs are set forth in the PTCS, Section A #'s 76 – 82, and Section B, p.15 Blaze Litigation #'s 1 – 10.

The evidence will show that:

- Debtor filed a prior bankruptcy Case #16-52273 (MEH) on August 8, 2017 ("Prior Bankruptcy Case"). It was dismissed on March 4, 2018, less than one (1) year before the Current Bankruptcy Case commenced. Saul Flores filed bankruptcy case #16-50429 (DM) on 2/15/2016 and had it dismissed on 4/29/2016, and bankruptcy case #15-51705 (DM) on 5/19/2015 and had it

Plaintiffs' Trial Brief                                                          AP #19-5063

dismissed on 1/28/2016 ("<u>Saul Flores Bankruptcy Cases</u>").

- The Debtor's interests in the Blaze Lawsuit were community property, as were the Debtor's interests in Blaze.

- Plaintiffs were not given notice of the Saul Bankruptcy Cases, the Prior bankruptcy Case, or the Current Bankruptcy Case, nor scheduled as creditors (despite holding secured and unsecured claims), and therefore did not appear until March 6, 2019, when the undersigned attorney filed a Notice of Appearance. [Current Bankruptcy Case ECF # 45] Plaintiffs then filed an objection to the Debtor's proposed Chapter 11 Plan and Disclosure Statement on March 26, 2019 [Current Bankruptcy Case ECF # 52]. Thus began an odyssey of discovering the truth about the Debtor's financial affairs, leading to belated "foxhole" amendments of her bankruptcy schedules.

- The Blaze Lawsuit was not disclosed in any of the Saul Flores Bankruptcy Cases, or the Debtor's Prior Bankruptcy Case, or in the initial or multiple amended schedules in the Debtor's Current Bankruptcy Case, or the Debtor's Plan and Disclosure Statement in the Current Bankruptcy Case, until **after** Plaintiffs brought this concealment to the Bankruptcy Court's attention.[4]

- The Debtor subsequently continued the subterfuge by arguing the Blaze Lawsuit was of minimal value to her bankruptcy estate, however ultimately agreed the Trustee in the Current Bankruptcy Case was entitled to $1.2M of the settlement proceeds after the Trustee was forced to sue the Debtor, Mr. Flores and Blaze for declaratory relief in Adv.Pro. No. 20-05035.

- The Blaze Lawsuit settled for more than $3.5M.

 **(B) The Controlled Entities and Residence**

  The Defendants' pattern of deception, concealments and false oaths in connection with the Controlled Entities and Residence are detailed in the JPCS at pp. 12 – 18, Sections V – VII.

 **1. Denial of Discharge Under Code § 727(a)(7) - (Concealment of Property and False Oaths in Connection with Prior Bankruptcy Case)**

  Code § 727(a)(7) extends the basis for denial of discharge to the debtor's misconduct in a

---

[4] The Parties stipulated the Debtor's schedules and statements may be admitted into evidence. (See, Stipulation Re: Admission of Defendants' Bankruptcy Schedules and Statements Into Evidence filed on August 24, 2023, ECF # 60)

Plaintiffs' Trial Brief            AP #19-5063

substantially contemporaneous related bankruptcy case. *Seror v. Lopez (In re Lopez)*, Nos. 1:11-bk-16307-MT, 1:12-ap-01097-MT, 2014 Bankr. LEXIS 2598, at *22-23 (Bankr. C.D. Cal. June 12, 2014)   The evidence will show, **and the Debtor is deemed to have admitted**,[5] she concealed assets and made false oaths in her Prior Bankruptcy Case by concealing the Blaze Lawsuit, concealing her interests in the Controlled Entities, and omitting the liens against the Residence while manipulating the value, thus committing acts under Code §§ 727(a)(2)(B) and 727(a)(4). The elements of proof for both Code §§ 727(a)(2)(B) and 727(a)(4) are discussed immediately below.

## 2.    Denial of Discharge Under 11 U.S.C. § 727(a)(2) – (Concealment of Property)

"A party seeking denial of discharge under Code § 727(a)(2) must prove two things: '(1) a disposition of property, such as transfer or concealment, and (2) a subjective intent on the debtor's part to hinder, delay or defraud a creditor through the act of disposing of the property.'" *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1200 (9th Cir. 2010) (citing *Hughes v. Lawson (In re Lawson)*, 122 F.3d 1237, 1240 (9th Cir.1997)). Concealment includes "preventing discovery, fraudulently transferring, **or withholding knowledge or information required by law to be made known**." *United States v. Turner*, 725 F.2d 1154, 1157 (8th Cir. 1984) {emphasis added}.

Code § 727(a)(2) requires a subjective intent on the debtor's part to hinder, delay or defraud a creditor or the chapter 7 trustee. Denial of discharge, however, need not rest on a finding of intent to defraud. Intent to hinder or delay is sufficient. *Bernard v. Sheaffer (In re Bernard)*, 96 F.3d 1279, 1281 (9th Cir. 1996) *In re Ereren*, 2013 Bankr. LEXIS 4865, 2013 WL 2321917, at *4  (9th Cir. BAP 2013) ("[A] finding of intent to hinder or delay or defraud is sufficient to deny discharge under § 727(a)(2).").

The intent of a debtor in making a transfer or concealment of property is a question of fact that "may be established by circumstantial evidence, or by inferences drawn from a course of conduct." *Devers v. Bank of Sheridan (In re Devers)*, 759 F.2d 751, 753 (9th Cir. 1985), see also *Adeeb v. Adeeb (In re Adeeb)*, 787 F.2d 1339, 1342 (9th Cir. 1986). Lack of injury to creditors is irrelevant for purposes of denying a discharge in bankruptcy. *Devers*, Id., quoting *In re Adeeb*, 787 F.2d at 1343.

---

[5] See Plaintiffs' Exhibit 11 as addressed in Plaintiffs' Omnibus Motions In Limine.

Plaintiffs' Trial Brief                                                              AP #19-5063

The evidence will show the Debtor intended to conceal the Blaze Lawsuit, her interests in the Controlled Entities, and the liens against the Residence as well as the value thereof, to hinder, delay and/or defraud her creditors. The evidence will also show that this was a continuing course of conduct that began in the Saul Bankruptcy Cases.

### 3. Denial of Discharge Under 11 U.S.C. § 727(a)(4)(A) – (False Oaths)

To obtain a denial of discharge under Code § 727(a)(4)(A), Plaintiffs must show: "(1) the Debtor made a false oath in connection with the case; (2) the oath related to a material fact; (3) the oath was made knowingly; and (4) the oath was made fraudulently." *In re Retz*, Id., 606 F.3d at 1197, cited in *In re Thruston*, No. AZ-14-1309-KiPaJu, 2015 Bankr. LEXIS 2153, at *26-27 (9th Cir. BAP, June 30, 2015)

A false statement or an omission in the debtor's bankruptcy schedules or statement of financial affairs (which are signed under penalty of perjury) can constitute a false oath. See *Khalil v. Developers Sur. & Indem. Co. (In re Khalil)*, 379 B.R. 163, 172 (9th BAP Cir. 2007), aff'd, 578 F.3d 1167 (9th Cir. 2009)

A false oath is complete when made. *In re Searles*, 317 B.R. 368, 377 (9th Cir. BAP 2004). The disclosure of secreted assets through amendments does not insulate a debtor from a finding of fraudulent intent with respect to false oaths in his or her original bankruptcy documents. *AutoSource Capital, Inc. v. Traina (In re Traina)*, 501 B.R. 379, 384 (Bankr. N.D. Cal. 2013). "Moreover, failing to rectify inconsistencies and omissions when filing amended schedules may be weighed in favor of finding the requisite intent to deceive." Id. at 386. Amending bankruptcy schedules to disclose material facts after those facts come out at a meeting of creditors do not preclude denial of discharge: **"foxhole conversions are not necessarily convincing, and disclosures made after a debtor realizes exposure is imminent do not absolve fraud."** *Hansen v. Moore (In re Hansen)*, 368 B.R. 868, 877 (9th Cir. BAP 2007), cited in *United States Tr. v. Ellis (In re Ellis)*, 591 B.R. 32, 50-51 (Bankr. W.D. Wash. 2018){emphasis added}. Were the law otherwise:

> "Debtors who without compunction conceal assets and file fraudulent schedules, but who realize exposure is imminent and have the grace (or wit) to surrender before the § 341 meeting, would receive discharges. Ultimately, it would grant debtors time to gauge the aggressiveness of their creditors before committing to comfortable levels of

Case: 19-05063    Doc# 71    Filed: 09/13/23    Entered: 09/13/23 21:14:46    Page 14 of 19

divulgence." *Beauchamp v. Hoose (In re Beauchamp)*, 236 B.R. 727, 734 (9th Cir. BAP 1999)

A fact is material if it bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of the debtor's property. *In re Khalil*, 379 B.R. 163, 173 (9th Cir. BAP 2007) An omission or misstatement  that "detrimentally affects administration of the estate" is material. *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1198 (9th Cir. 2010)

Debtor's signatures on her bankruptcy schedules, statements and declarations are false oaths. The Debtor admitted this by failing to respond to Requests for Admissions, which was upheld by this Court. (See Exhibit 11).

Debtor's false oaths were made knowingly and fraudulently. Where, as here, there is a great disparity between the scheduled value of an asset and its potential value if fairly valued, the court may draw an inference that the Debtor has knowingly and fraudulently made a false oath. **The size or nature of a single [misstatement or omission], might suffice to support a finding that a debtor knowingly and fraudulently made a false oath or account.**" *Khalil*, Id. at 176 {emphasis added}. In considering whether the requisite intent is present, the court can consider if there has been a pattern of falsity or a debtor's reckless indifference to or disregard of the truth. *In re Retz*, Id. at 1198 – 99.

The Debtor's conduct in the Prior Bankruptcy Case and Current Bankruptcy Case flies in the face of the Debtor's duty to prepare her statement of financial affairs and schedules "carefully, completely, and accurately." *Cusano v. Klein*, 264 F.3d 936, 945-946 (9th Cir. 2001). The "duty to assure accurate schedules of assets is fundamental because the viability of the system of voluntary bankruptcy depends upon full, candid, and complete disclosure by debtors of their financial affairs." *In re Searles*, 317 B.R. 368, 378 (9th Cir. BAP 2004) "Adopting a cavalier attitude toward the accuracy of the schedules and expecting the court and creditors to ferret out the truth is not acceptable conduct by debtors or their counsel." *AT&T Universal Card Servs. Corp. v. Duplante (In re Duplante),* 215 B.R. 444, 447 (9th Cir. BAP1997). And although the Debtor will undoubtedly cast

Case: 19-05063    Doc# 71    Filed: 09/13/23    Entered: 09/13/23 21:14:46    Page 15 of 19

blame on her attorneys[6] and/or Mr. Flores, "Debtors are presumed to have read the schedules and statements before signing the documents, and are responsible for their contents." *In re Rolland*, 317 B.R. 402, 414 (Bankr.C.D.Ca. 2004); *In re Bohrer*, 266 B.R. 200, 201 (Bankr.N.D.Ca. 2001) "statements in bankruptcy schedules are executed under penalty of perjury and when offered against a debtor are eligible for treatment as judicial admissions." (citations omitted); See Fed.R.Evid. 801(d)(2); and FRBP 9017.

Debtor's discharge should therefore be denied under Code §727(a)(4)(A) for signing numerous bankruptcy schedules and statements that omitted material assets knowingly and fraudulently. Mr. Flores's community discharge under Code §524(a)(3) should likewise be denied for aiding, abetting and controlling the Debtor.

## V. Non-dischargeability of Debt Under 11 U.S.C. § 523(a)(4) – (Fraud or Defalcation While Acting in a Fiduciary Capacity)

"To prevail on a non-dischargeability claim under § 523(a)(4) the plaintiff must prove not only the debtor's fraud or defalcation, but also that the debtor was acting in a fiduciary capacity when the debtor committed the fraud or defalcation." *Honkanen v. Hopper (In re Honkanen)*, 446 B.R. 373, 378 (9th Cir. BAP 2011).

Federal bankruptcy law determines whether a fiduciary relationship exists within the meaning of Code §523(a)(4). *Cal-Micro, Inc. v. Cantrell (In re Cantrell)*, 329 F.3d 1119, 1125 (9th Cir. 2003). Although the definition of fiduciary is governed by federal law, the Ninth Circuit has relied in part on state law to ascertain whether the requisite trust relationship exists. *Cantrell*, 329 F.3d at 1125; *Blixseth v. Blixseth (In re Blixseth)*, 459 B.R. 444, 458 (Bankr. D. Mont. 2011). The fiduciary relationship "must be one arising from an express or technical trust that was imposed before and without reference to the wrongdoing that caused the debt." *Lewis v. Scott (In re Lewis)*, 97 F.3d 1182, 1185 (9th Cir. 1996).

While analysis under California law of the fiduciary duties of individual board members of a limited liability company ("LLC") managed by a board of directors is complex, Plaintiffs contend it

---

[6] Plaintiffs challenged the Defendants anticipated use of an advice of counsel defense in Plaintiffs' Motions in Limine.

Case: 19-05063   Doc# 71   Filed: 09/13/23   Entered: 09/13/23 21:14:46   Page 16 of 19

is not necessary. The evidence will show the Controlled Entities formed as LLC's are a sham that were organized and specifically designed to allow the Defendants complete and unfettered control. (See discussion on alter ego liability in Section III. (1), *supra*). Consequently, the individuality and separateness of LLC's should be disregarded.

For defalcation, federal law defines it as a "misappropriation of trust funds or money held in any fiduciary capacity: [the] failure to properly account for such funds." *Otto*, 106 F.3d at 1460, citing *Lewis v. Scott (In re Lewis)*, 97 F.3d 1182, 1185 (9th Cir. 1996) (quoting Black's Law Dictionary 417 (6th ed. 1990)). To prevail on a defalcation claim, plaintiffs must allege that the defendants had a culpable state of mind and committed an intentional wrong. *See Bullock v. BankChampaign, N.A.*, 569 U.S. 267, 273, 133 S. Ct. 1754 (2013). The evidence will prove exactly that.

**VI.     Non-dischargeability of Debt Under 11 U.S.C. § 523(a)(6) – (Intentional Tort - Theft)**

Plaintiffs assert that any debt owed to them by Defendants is nondischargeable under Code § 523(a)(6) for "for willful and malicious injury by the debtor to another entity or to the property of another entity." As noted by the Ninth Circuit in *Lockerby v. Sierra*, "tortious conduct is a required element for a finding of nondischargeability under § 523(a)(6)." 535 F.3d 1038, 1040 (9th Cir. 2008). Bankruptcy courts look to state law to determine if the defendant's conduct was tortious. *Petralia v. Jercich (In re Jercich)*, 238 F.3d 1202, 1205 (9th Cir. 2001). The evidence will show the Defendants converted Plaintiffs' Investment Funds for their personal use. A claim of conversion can support a finding of nondischargeability under § 523(a)(6). *Cadleway Props., Inc. v. Armstrong (In re Armstrong)*, 2006 Bankr. LEXIS 2689, 2006 WL 2850527, at *11 (Bankr. D. Idaho Oct. 3, 2006).

An injury is willful where "the debtor had a subjective motive to inflict the injury or that the debtor believed the injury was substantially certain to occur as a result of his conduct." *Jercich*, Id., at 1208. The evidence will show the Defendants knew the injury was certain to occur, and the conversion of the Investment Funds was done without just cause or excuse.

**VII.     Receipt of Stolen Property – Treble Damages and Attorneys' Fees (California Penal Code § 496)**

To establish a violation of California Penal Code ("Cal.Pen.Code") § 496, Plaintiffs must show: "(i) property was stolen or obtained in a manner constituting theft, (ii) the defendant knew the property was so stolen or obtained, and (iii) the defendant received or had possession of the stolen property." *Lacagnina v. Comprehend Sys., Inc*., 25 Cal. App. 5th 955, 970, 236 Cal. Rptr. 3d 641 (2018)

Money obtained through false representations or fraud can constitute theft within the meaning of Cal.Pen.Code § 496. As reflected in *Bell v. Feibush*, 212 Cal. App. 4th 1041, 1048, 151 Cal. Rptr. 3d 546 (2013), the issue of whether a wrongdoer's conduct in any manner constituted a "theft" is elucidated by other provisions of the California Penal Code defining theft, such as Cal.Pen.Code § 484. *Switzer v. Wood*, 35 Cal. App. 5th 116, 126-27, 247 Cal. Rptr. 3d 114, 121-22 (2019), see also *Siry Inv., L.P. v. Farkhondehpour*, 13 Cal. 5th 333, 361-62, 296 Cal. Rptr. 3d 1, 513 P.3d 166 (2022)

The evidence will show the Defendants obtained the Investment Funds by fraud and false pretenses, and that the Defendants were operating an investment scam through the Controlled Entities. California courts have held that "the fact that the defendant stole the property no longer bars a conviction for receiving, concealing or withholding the same property." *People v. Strong*, 30 Cal. App. 4th 366, 373 (1994); see also *People v. Allen*, 21 Cal.4th 846, 857 (1999) (noting that § 496(a) "authorizes a conviction for receiving stolen property even though the defendant also stole the property" (emphasis in original)).

"Assuming a defendant's knowledge that the property at issue was stolen, section 496, subdivision (a) may be violated in either of two ways: (1) by buying or receiving any property that has been stolen or (2) **by conceal[ing]**, sell[ing], **withhold[ing] or aid[ing] in concealing**, selling, **or withholding any property from the owner**. [E]ach of the prohibited acts listed in section 496, subdivision ([a]) are separate and distinct offenses." *People v. Brown*, 32 Cal. App. 5th 726, 732 (2019) (internal quotation marks and citations omitted){emphasis added}. The evidence will also show both Defendants knew the Investment Funds were stolen by fraud and false pretenses, and concealed and withheld the Investment Funds from the Plaintiffs through the Controlled Entities.

Although Cal.Pen.Code § 496 defines a criminal offense, it also provides an enhanced civil remedy in the event there has been a violation of the statute—that is, where a person has knowingly

Case: 19-05063   Doc# 71   Filed: 09/13/23   Entered: 09/13/23 21:14:46   Page 18 of 19

received, withheld or sold property that has been stolen or that has been obtained in any manner constituting theft. (Cal.Pen.Code 496(a)) The enhanced civil remedy authorized by the statute is that any party injured by the violation of Cal.Pen.Code § 496 may file an action for "*three times the amount of actual damages*" sustained, and for costs of suit and reasonable attorney fees. *Switzer v. Wood*, 35 Cal. App. 5th 116, 247 Cal. Rptr. 3d 114 (2019)[7]

Treble damages are available even when the defendant hasn't been criminally convicted under the statute. *Switzer*, Id. at 126, citing *Bell v. Feibush*, 212 Cal. App. 4th 1041, 1045-1047, 151 Cal. Rptr. 3d 546 (2013). In *Bell v. Feibush*, *supra*, 212 Cal.App.4th 1041, the trial court awarded treble damages to the plaintiff under Cal.Pen.Code § 496(c) based on evidence presented in a default prove-up hearing that the defendant had committed theft by false pretenses in violation of Cal.Pen.Code § 496(a).

## VIII.   CONCLUSION

Defendants have successfully engaged in financial fraud and bankruptcy abuse for too long. Plaintiffs are entitled to the return of their Investment Funds in the amount of $861,932 which amount is trebled under California Penal Code § 496, plus prejudgment interest, plus costs and attorneys' fees under California Penal Code § 496 in an amount to be determined through post-trial motions, together with a determination that such amount is nondischargeable and/or that the Debtor is denied a discharge and Mr. Flores is denied a community discharge.


Dated: September 13, 2023                    Respectfully submitted,


                                             */s/ Wayne A. Silver*
                                             Wayne A. Silver, attorney for Plaintiffs
                                             *PHU K. VUONG* and *MOSAIC REAL ESTATE INVESTMENT, LLC*

---

[7] See also, *Casamassima v. Cuadra*, No. 20-cv-04071-JSC, 2020 U.S. Dist. LEXIS 239982, 2020 WL 7482214, at *4 (N.D. Cal. Nov. 16, 2020) (citing *Bell v. Feibush*, 212 Cal. App. 4th 1041, 1048, 151 Cal. Rptr. 3d 546 (2013); *Sustainable Pavement Techs., LLC v. Holiday*, No. 2:17-cv-02687-WBS-KJN, 2019 U.S. Dist. LEXIS 100325, 2019 WL 2483294, at *3 (E.D. Cal. June 14, 2019); *Li Mei Chen v. Urban Commons 6th Ave Seattle, Ltd. Liab. Co.*, No. 2:21-cv-08866-JLS-DFM, 2023 U.S. Dist. LEXIS 73142 (C.D. Cal. Apr. 18, 2023)

Plaintiffs' Trial Brief                                                        AP #19-5063