Stanley A. Zlotoff, State Bar No. 073283
Attorney at Law
300 S. First St. Suite 215
San Jose, CA 95113
zlotofflaw@gmail.com
Telephone (408) 287-5087
Facsimile (408) 287-7645

Attorney for Defendants

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re: | ) Chapter 7 |
| Jacqueline Lopez-Flores, | ) Case No. 18-52014SLJ |
| | ) Adv. Pro. No. 19-5063 |
| Debtor. | ) Date: September 20, 2023 |
| | ) Time: 9:00 a.m. |
| Phu K. Vuong, et.al, | ) |
| Plaintiffs | ) |
| vs | ) |
| Jacqueline Lopez-Flores and Saul Roberto Flores, | ) |
| Defendants. | ) |

TRIAL BRIEF

INTRODUCTION

Defendant Saul Flores("Saul"), during the pertinent times of Plaintiffs' investments, was the Responsible Managing

- 1 -

Employee of Ground Zero Construction, Inc.("GZ"), a company owned by Jim McClenahan and Ali Abiani.

GZ was engaged in commercial and residential real property development.  In fact, Saul and Plaintiff Phu Vuong("Vuong") met while GZ was involved with a construction project near a single family spec home located on  496 Minnesota Avenue in San Jose("Minnesota") owned by Vuong.

In December 2013, GZ and Vuong entered into a Home Improvement Contract whereby GZ agreed to remodel Minnesota to enable Vuong to flip it for a profit.  Vuong purchased Minnesota for $630,000 in November 2013, and after GZ completed work on the project, Vuong sold it in July 2015 for $1,398,000.

It is common for developers to organize a project as an LLC in order to engage investors. Vuong too, with regard to his various real estate investments organized them into LLCs.

Saul created Uno Group Food and Beverage, LLC("UGFB") as a vehicle for investment into the Blaze,Inc.-Popolo restaurant venture to be located at Valley Fair Shopping Mall in San Jose.

 95 Hamilton,LLC("95 Ham") was formed to coordinate investment in an office building at 95 E. Hamilton Avenue, Campbell, California.

Iron Springs Development,LLC("Iron Springs") was formed as a project to develop a single family residence on Iron Springs Road in Los Gatos, California.

All of the subject LLCs—Uno Group, 95 Ham, and Iron Spring—

(collectively, the "Entities") entailed build outs. None dealt with ongoing businesses, so none generated any income during the pertinent time period.

All of the Entities had designated GZ as their general contractor. None of them had any need for investment funding except for committing it to construction related expenses.

The nature of construction work is such that the contractor will perform parts of a job before a percentage of funding is released to him. That describes the course of conduct with respect to Minnesota—GZ did a portions of work and Vuong authorized progress payments.

The Entities were not able to acquire construction loans. As a result, GZ had to rely on investment funds deposited with the Entities as well as loans from others, particularly from Eagle Home Loans("EHL"), a loan brokerage owned by Jim McClenahan.

ARGUMENT

**FIRST CLAIM FOR RELIEF—523(a)(4)**

Plaintiffs fail to distinguish between the Entities and Blaze,Inc. and GZ. The entities as LLCs would imbue each member with a fiduciary duty toward the others, but not so with regard to a controlling officer or shareholder of a corporation to other shareholders or creditors. A person in control of a corporation does not act as a fiduciary, pursuant to 523(a)(4), with respect to corporate

assets. In re Cantrell, 329 F.3d 1119,1127(9th Cir. 2007)

The gist of Plaintiffs' claim is that Defendants diverted funds from the Entities to which Plaintiffs investments were directed. But this is not the case. Rather, the investments were properly transferred to GZ the designated general contractor for the Entities.

There is no evidence that Defendants wrongfully benefitted from any funds deposited with GZ. Moreover, GZ bore no duty to segregate the funds received. The money deposited was fungible. There were no "red, blue or yellow dollars each of which can only be used for the "red," "blue," or "yellow" construction project." In re Boyle, 819 F.2d 583,586(5th Cir. 1987).

In any event, under the circumstances, Defendants hardly harbored either criminally reckless scienter or fraudulent intent. Bullock v. BankChampaign, N.A., 569 U.S. 267,273-4(2013). To prove defalcation, a creditor must establish "a culpable state of mind…involving knowledge of or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior." In re Maue, 611 B.R. 367,398(Bankr. W.D. WA 2019).

For example, in Donut Café, LLC v Dieyleh, 2022 Bankr. LEXIS 1186*30(Bankr. CO 4/18/2022), the debtor escaped 523(a)(4) liability, notwithstanding a contention that he commingled funds of a separate business with a joint venture, because "he entertained a good faith belief that{his business}could

- 4 -

commingle funds for the common good of the {joint venture} so long as {it} ultimately received payment of all funds to which it was entitled."

Similarly, in a case where the managing members of various LLCs formed for real estate investment commingled funds from them by using the same bank account for deposits, the court denied relief based on defalcation, except for an amount that was diverted to debtor personally, stating that "The fact that Scott commingled the assets and liabilities of HPI and HPIII does not, by itself, give rise to a 523(a)(4) debt—Laura bears the burden of pointing to specific transactions that harmed her." In re Huntington, 2012 Bankr. LEXIS 3582*29(Bankr. WD WA 7/30/2012).

**SECOND CLAIM THROUGH FOURTH CLAIMS--727(a)(7),727(a)(2)and(4)(A)**

**A. False Oath Regarding Family Home**

The 727(a)(7) claim is based on an alleged false oath in a prior case, on account of debtor-Defendant Jacqueline Lopez-Flores("Jacki") having mislead the court regarding her community property interest in the family home. According to Plaintiffs, she puffed up the amount of equity in it.

The Fourth Claim for Relief repackages the false oath claim regarding the family home, but situates it in the current main case.

Among the elements of 727(a)(4(A) liability are a false oath, related to a material fact, that was knowingly and

fraudulently made. In re Retz, 606 F.3d 1189,1197(9th Cir. 2010)

It is not up to a debtor to decide what is worthwhile and what isn't. Rather, the creditors and trustee decide what may benefit the bankruptcy estate. Heidkamp v. Whitehead, 278 B.R. 589, 594(Bankr. M.D. Fla 2012). Jacki had a duty to disclose, and did so by making sure that her scheduling was over-inclusive.

The normal 727(a)(4) case concerns omissions, not mistaken additions. "The essential point is that there must be something about the adduced facts and circumstances which suggest that the debtor intended to defraud creditors or the estate." In re Khalil, 379 B.R. 163, 175(9th Cir. BAP 2007). In the normal case, it is the "size and status of the *omitted* assets {that} is directly relevant to determining debtor's intent and whether it was fraudulent." In re Coombs, 193 B.R. 557,566(Bankr. S.D. CA 1996) (emphasis added).

Simply put, scheduling an asset that may ultimately prove not to be collectible does not suggest a fraudulent intent.

**B. VF-Blaze lawsuit omission False Oath**

Jacki's omissions, in her prior case, of the Blaze-VF lawsuit("Lawsuit") were neither knowingly nor fraudulently made.

It appears that the Lawsuit was not verified, and given that the gist of it was Blaze's claim against VF for interference with its leasehold interest, Debtor may very well have understood that her presence in the Lawsuit was as a

nominal plaintiff.  Indeed, legal strategy may have determined to so name her, inasmuch, as she was apparently guarantor of the said lease.

"A common instance of 'false oath' is when a debtor declares that the schedule of property is true and correct and it appears that the debtor has knowingly and fraudulently omitted assets from it.  But if items were omitted by mistake, the declaration will not be deemed willfully false, and the discharge should not be denied because of it." In re Merena, 413 B.R. 792,816(Bankr. Mont. 2009),affd. 2009 Bankr. LEXIS 5531(9th Cir. BAP 12/10/2009).

"Knowingly" requires that Jacki acted "deliberately and consciously." In re Roberts, 331 B.R.876,883-4(9th Cir. BAP 2005). Neither carelessness nor recklessness satisfy this standard. Id.  Defendants contend that at most, Jacki was careless or ignorant with respect to the Lawsuit omission.

Furthermore, while the main case was filed on September 4, 2018, she amended her Statement of Financial Affairs on November 8, 2018 to disclose the Lawsuit.  The prompt correction of an inaccuracy or omission is probative of lack of fraudulent intent. *Retz*, *supra.* p. 304.  *Retz* distinguished In re Wright, 364 B.R. 51,(Bankr. Mont. 2007), affd. 2008 U.S. Dist. LEXIS 3347(D.Mont. 1/15/2008), as illustrative of a "prompt" amendment. *Retz*,Id.  In *Wright*, the case was commenced in May 2005, and the amendment made in February 2006.  Here, the

amendment was made within two months.

**C. False Oath regarding Omission of Entities**

Saul had formed a confusing array of entities. It is understandable that Jacki may not have been completely conversant as to all of them. Such ignorance or carelessness on her part does not rise to the level of knowing and fraudulent conduct.

Section 727's denial of discharge is construed liberally in favor of the debtor and strictly against those objecting to discharge. In re Adeeb,787 F.2d. 1339,1342(9th Cir. 1986).

Moreover, Jacki is informed and believes that her counsel was provided with the information with which to make accurate disclosures. If items were omitted by mistake or upon honest advice of counsel, to whom the debtor had disclosed all the relevant facts, the declaration will not be deemed willfully false, and the discharge should not be denied because of it. *Retz*, supra. p. 302.

**D. 727(a)(2)**

Here, Plaintiffs allege that Defendants knowingly and fraudulently concealed property by failing to disclose their complete interest in the Entities and the Lawsuit.

The analysis of the scienter required to find liability based on 727(a)(2) and (a)(4)is the same. *Wright*, *supra* p. 61

**Fifth Claim for Relief—Receipt of Stolen Property**

Citing to Siry Inv.,L.P.v. Farkhondehpour, 13 Cal.5th

333(2022), Plaintiffs cobbled together a theory of relief based on California Penal Code Section 496(c)("496"), and allege that Debtor "aided and abetted Saul Flores and the Controlled Entities in obtaining by false pretenses…Plaintiffs' investment funds."

The elements of 496 are (1) property stolen or obtained in a manner constituting theft;(2) the defendant knew the property was stolen; and (3) the defendant received or had possession of the stolen property. *Id*. p.355

The definition of "theft" includes theft by false pretenses. Id. p. 350. But not all disputes alleging fraud amount to theft. *Id*.361 "If misrepresentations or unfulfilled promises are made innocently or inadvertently, they can no more form the basis for a prosecution for obtaining property by false pretenses than can an innocent breach of contract." Id. p.362.

*Siry* found theft on the part of the defendants because they had diverted partnership funds to a personal project, and kept plaintiff ignorant of their wrongdoing. Id. p. 340.

People v Ashley, 42 Cal.2d 246,264(1954), cited by *Siry*, stated that "in cases of obtaining property by false pretenses, it must be proved that any misrepresentations of fact alleged by the People were made knowingly and with intent to deceive."

The concurrence explained that "a defendant's good faith but erroneous belief in the truth of his or her misrepresentation or that the defendant has a right to the

- 9 -

property taken negates the felonious intent necessary for conviction of theft." *Siry*, Id. p.368.

Moreover, citing to *Ashly*, supra. p. 254 and Cal. Penal Code Section 532(b), the concurrence explained that "the testimony of a single witness that the defendant obtained the money or property through a false promise or representation must be corroborated. Siry, *supra*. p. 369

Here, there was no intent to deceive, no diversion of funds, and no corroboration of any wrongdoing.

**Sixth Claim for Relief—523(a)(6)**

Willful injury requires the debtor to have acted with a subjective intent to harm or with a subjective belief that harm is substantially certain. Carillo v. Su, 290 F.3d,1140 1144(9th Cir. 2002); and maliciousness means a wrongful act, done intentionally, which necessarily causes injury, and is done without just cause or excuse. Id. p.1146-7.

In *Huntington*, supra. at*33, the Court declined to find 523(a)(6) liability because there was no evidence of subjective motive to injure; rather, the evidence showed that the defendant's "commingling of funds, transferring of assets, loans and repayments and overall course of conduct was intended to save the Huntingtons' real estate business. He did not intend to harm Laura, nor did he believe that his conduct was substantially certain to injure her." Similarly, where the debtor breached an inventory security agreement by not

- 10 -

segregating cash collateral after a breach had been noticed, no malice was found, because he was "acting with the hope and expectation of saving the business." In re Littleton, 942 F.2d 551,555(9th Cir. 1991).

### A. Alter Ego Liability

"Alter ego" is not a substantive claim like breach of contract, but rather procedural. Ahcom,Ltd. V. Smeding, 623 F.3d 1248,1251(9th cir. 2010). The first issue to address, before considering alter ego is whether a fraud occurred. If there has been no fraud, then use of alter ego is inappropriate.

The elements of alter ego are when (1)there is such a unity of interest and ownership between the corporation and the controlling individual that their separate personalities no longer exist, and (2) the facts are such that inequity will result otherwise. Mesler v. Bragg Mgmt. Co, 39 Cal. 3d 290

Here, even if there were wrongdoing, alter ego does not fit as a remedy, because there was not unity of interest and ownership between Defendants and the Entities.

### B. Minnesota Property

GZ and Plaintiffs agreed that GZ would remodel the Plaintiffs' Minnesota property so it could be flipped for a profit. A deed of trust in favor of Plaintiffs and against Ali Abiani, was provided to assure completion of the project. After completion of work, Plaintiffs sold it to Buyers, who allegedly found defects. Nevertheless the Abiani deed of trust should

have been reconveyed.

Buyers and Plaitiffs engaged in voluntary mediation where they entered into a settlement. Thereafter, Plaintiffs demanded that Defendants reimburse them for the settlement amount as well as their attorney's fees. Plaintiffs assert the right to attorney's fees based upon the "tort of another" doctrine.

Under California law, it is a well-established principle that attorney fees incurred through instituting or defending an action as a direct result of the tort of another are recoverable damages. <u>Third Eye Blind, Inc. v. Near North Entertainment Ins. Services</u>, 127 Cal.App.4th 1311, 1324-1325 (2005). The doctrine is inapplicable, because no action occurred. According to California Code of Civil Procedure Section 22, an "action" is an "ordinary proceeding in a court of justice by which one party prosecutes another…"

Further, the party claiming 'tort of another' damages has the burden of proof that the tortious conduct occurred. <u>Shapiro v. Sutherland</u> 64 Cal.App.4th 1534, 1551, fn. 19 (1998). However, there has been no finding or determination that Saul or GZ was negligent and caused the alleged construction defects or even that any existed, in the Minnesota Property mediation.

Expert testimony is required to make out a case for professional negligence in construction as well as for

establishing that there were any defects in or at the premises. See <u>Miller v. Los Angeles County Flood Control Dist.</u>, 8 Cal.3d 689, 702 (1973). Here, no expert has been identified, so any evidence of defective workmanship would be inadmissible.

**Secured Loans**

Plaintiffs filed a Proof of Claim Number 7 based on loans secured by Defendants' family home, given to Saul. The loans were usurious, so an objection to the claim was filed by Defendants.

CONCLUSION

Judgment for Defendants should be granted; usurious interest on the Secured Loans should be stricken; and the deed of trust on Ali Abiani's home should be ordered reconveyed.

Dated: 9/13/2023 /s/Stanley Zlotoff